# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

TERRY MOBLEY          )
                         )
       Plaintiff,      )
                         )
vs.                     )     Cause No. 1:17-cv-485
                         )
WICK-FAB, INC.,       )
                         )
       Defendant.     )

## OPINION AND ORDER

This matter comes before the Court on Defendant Wick-Fab, Inc.'s Motion for Summary Judgment (ECF No. 22). Defendant seeks judgment as a matter of law on Plaintiff's claims under the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and Indiana common law. For the reasons set forth below, Defendant's motion will be granted with respect to Plaintiff's federal claims. Plaintiff's state law claim will be dismissed without prejudice for the Plaintiff to re-file in state court.

## PROCEDURAL HISTORY

Plaintiff's Complaint and Demand for Jury Trial (ECF No. 1) was filed on November 28, 2017. Defendant filed its Answer to Complaint (ECF No. 13) on January 19, 2018. The instant motion, with Memorandum in Support (ECF No. 23) and Appendix (ECF No. 24) was filed on January 22, 2019. Plaintiff filed his Response in Opposition to Defendant's Motion for Summary Judgment (ECF No. 25) on February 19, 2019. In his Response, Plaintiff "jettisoned" his claims for failure to accommodate and retaliation under the ADA. (*Id.*, p. 2). Defendant filed its Reply in Support of Motion for Summary Judgment (ECF No. 26) on March 5, 2019. On March 12, 2019, Plaintiff filed his Motion for Leave to File Surreply and for Extension of Time to File Surreply

(ECF No. 27). Defendant filed its Response to Plaintiff's Motion for Leave to File Surreply and for Extension of Time to File Surreply (ECF No. 28) on March 13, 2019. This Court granted Plaintiff leave to file his surreply (ECF No. 29), and Plaintiff's Surreply in Opposition to Defendant's Motion for Summary Judgment (ECF No. 30) was filed on April 25, 2019. The instant motion is now ripe for ruling.

## FACTUAL BACKGROUND

Plaintiff began his employment with Defendant in 2010, when he was about fifty years old. Plaintiff worked at Defendant's South Milford, Indiana, location, where his job title was "Welder." Plaintiff performed various jobs around the facility, including fabrication, welding, truck driving, and sandblasting. However, Plaintiff's primary job responsibility was "rack repair work." While other employees would do rack repair work "if there was a big order of racks, if things were slow, or if they were between jobs" (Shipe Dep., p. 39, ll. 1–6), Plaintiff testified that he did "all the rack repairs at South Milford," (Plaintiff's Dep., p. 55, ll 1–4).

Defendant's ownership changed hands on August 1, 2016, when it was purchased by Joe ("Joe") and Cheryl ("Cheryl") Cochran (collectively the "Cochrans"). After the purchase, the Cochrans began evaluating Defendant's business model, including whether Defendant would continue to do rack repair work. In November or December 2016, the Cochrans made the decision to stop most rack repair work because it was not profitable. Defendant continued to perform rack repair work as a courtesy for some existing customers, particularly Kautex, continuing into early 2018. The total time devoted to the continued rack repair work amounted to about two to three days per month.

On the morning of February 23, 2017, Plaintiff experienced a crush injury to his left hand while on the job. Plaintiff continued to work until his lunch break, at which time he applied an ice

pack from his lunch to his injured hand. Plaintiff states that he told his supervisor, Matt Shipe ("Shipe"), about the injury during lunch, but that Shipe did not respond. Plaintiff did not, however, show his hand to Shipe or request any medical treatment. Plaintiff returned to work after lunch and worked the remainder of his shift.

Plaintiff went to a previously-scheduled doctor's appointment the next day, February 24, 2017. The appointment was to treat an arthritic condition in Plaintiff's right hand, but the doctor expressed concern regarding Plaintiff's injured left hand. Plaintiff returned to the South Milford facility after the doctor's appointment and spoke to Shipe about the injury. At this point Shipe prepared a written summary of the information Plaintiff provided and sent it to Cheryl.[1] Cheryl asked Shipe to bring Plaintiff to Defendant's Avilla, Indiana, facility the following Monday morning so that Plaintiff could complete an injury form.

Plaintiff did not accompany Shipe to the Avilla facility the following Monday. The parties dispute the reason for Plaintiff's absence. Defendant asserts that Plaintiff told Shipe that he was not going to use worker's compensation insurance, and instead was going to use his personal insurance. Plaintiff denies ever making this statement; he testified that using his personal insurance would "cost me more money because there's a higher deductible and all that, than to go through the workman's comp because there was no deductible on that. So that didn't make any sense." (Plaintiff's Dep., p. 123, l. 23 – p. 124, l. 6). Instead of going to the Avilla facility, Plaintiff reported to the South Milford facility and worked his full shift both Monday, February 27, 2017, and Tuesday, February 28, 2017.

---

[1] It is unclear from the record whether Shipe drafted the summary on his own, or whether he was asked to do so by Cheryl. The Court concludes that the resolution of this uncertainly is irrelevant for the purposes of ruling on the instant motion.

Following his shift on February 28, 2017, Plaintiff presented to the Fort Wayne Orthopedics ("FWO") after-hours clinic due to pain in his left hand. FWO gave Plaintiff a black Velcro brace to wear on his left hand and provided him a Restriction Worksheet that stated he must wear the brace while working. There were no other restrictions noted. Plaintiff gave the Restriction Worksheet to Shipe when Plaintiff reported for work on March 1, 2017. Shipe read the Restriction Worksheet, saw Plaintiff wearing the brace, and asked Plaintiff if he could do his job. Plaintiff told Shipe that he would have "no problem" doing his job. Plaintiff continued to perform his regular job duties and did not report any subsequent issues to Shipe or anyone else.

At some point following Plaintiff's injury – either February 24 or February 28, 2017 – a phone call occurred between Plaintiff and Joe. During this phone call, Joe asked Plaintiff to submit bills from his hand injury through his personal insurance rather than Defendant's worker's compensation insurance. In response, Plaintiff told Joe that he was "thinking about it," but that he didn't know what he was going to do. (*Id.*, p. 175, ll. 1–9). Plaintiff continued to consider whether he would use the worker's compensation insurance up to the time he was terminated. Plaintiff had no additional communications with anyone from Defendant regarding a potential worker's compensation filing. Defendant did not become aware of any worker's compensation filing until it received notice from the State of Indiana on April 12, 2017. In fact, ***Plaintiff*** was not aware of his worker's compensation filing, submitted on April 10, 2017, until it was presented to him at his deposition. (*Id.*, p. 118, ll. 21–23).

On March 13, 2017, Joe informed Plaintiff that Defendant had made the decision to eliminate Plaintiff's position. Joe explained that the position was being eliminated because Defendant was no longer going to do rack repair work for its primary rack repair customer, Bosch

Automotive ("Bosch"). Defendant also terminated the following individuals due to the cessation of rack repair work:

| Name | Age (as of termination) | Disability Status | Position |
|---|---|---|---|
| Kyle Garrett | 25 | Unknown | General Labor/Welder |
| Terry Fugate | 63 | Unknown | Maintenance |
| Richard Landis | 53 | Unknown | Fabricator |
| Jack Kirkpatrick | 46 | Unknown | General Labor |
| Timothy Sanders | 40 | Unknown | Fabricator/Road Guy/Install |
| Ezekiel McSherry | 25 | Unknown | Shipping |

Plaintiff's termination was effective immediately. Defendant did not inform Bosch of the decision to cease rack repair work until March 15, 2017.

Plaintiff filed an EEOC Charge of Discrimination on April 12, 2017, and filed a second Charge of Discrimination on August 18, 2017. Cheryl authored a position statement in response, stating that "Mr. Mobley's sole job was to repair Bosch Automotive racks." As noted above, Plaintiff performed various jobs at Defendant's facility, rendering this statement incorrect. Cheryl admitted as much in her deposition, describing the statement as a "mistake." Additional facts will be presented as necessary below.

## LEGAL ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in their favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't*

*of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Additionally, a court is not "obliged to research and construct legal arguments for parties, especially when they are represented by counsel." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011).

## B. PLAINTIFF'S ADEA CLAIM

The ADEA makes it unlawful for an employer to take adverse action against an employee who is forty years or older "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). Age must be "the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Id.*

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d

216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). When the plaintiff does not present his argument in opposition to summary judgment in those terms, the direct method of proof is the "default rule." *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 880 (7th Cir. 2016) (quoting *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013)). Under that method, the test for whether a claim of intentional age discrimination should proceed to a jury is whether the admissible evidence, considered as a whole, would permit a reasonable factfinder to conclude that the plaintiff's age caused the adverse action. *See Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (setting out the standard for avoiding summary judgment on discrimination claim under the direct method of proof). In all cases, the question at summary judgment remains: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224; *see also Liu v. Cook Cnty.*, 817 F.3d 307, 315 (7th Cir. 2016) ("The proper question under either method is simply whether a reasonable trier of fact could infer retaliation or discrimination."); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014) ("[T]he fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination.").

Plaintiff has elected to frame his argument in the terms of the *McDonnell Douglas* indirect method framework; the Court will analyze the claim accordingly. The indirect method has three phases. In the first phase, the plaintiff must establish a prima facie case of discrimination. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 885 (7th Cir. 2018). Once a plaintiff establishes his prima

facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id*. If the employer does so, then the burden shifts back to the plaintiff for the third and final phase, during which the plaintiff must offer evidence suggesting that the proffered explanation is pretextual. *Id*.

It is undisputed that Plaintiff's discharge came about as Defendant reduced its workforce due to the decision to transition Defendant's business away from rack repair work. It also appears to be undisputed that some amount of rack repair work continued until early 2018, meaning that Plaintiff's job duties were absorbed by the remaining employees. A traditional reduction in force ("RIF") occurs when an employer decides to permanently eliminate multiple positions from its workforce, allegedly for economic reasons. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000); *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000). In the traditional RIF, the terminated employee establishes a prima facie case of age discrimination where he shows that (1) he was over the age of forty; (2) he performed his job according to his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees at least ten years younger were treated more favorably by the employer. *Filar v. Bd. of Educ. of the City of Chi.*, 526 F.3d 1054, 1060 (7th Cir. 2008) (citing *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744, 750–51 (7th Cir. 2006)). The Seventh Circuit has modified the fourth prong of the prima facie case "where the dismissed employee's duties are absorbed by another employee or employees rather than eliminated." *Petts v. Rockledge Furniture, LLC*, 534 F.3d 715, 725 (7th Cir. 2008). This so-called mini-RIF is distinguishable from a true RIF where the plaintiff's position is eliminated entirely and will not be refilled. *See Filar*, 526 F.3d at 1060; *Bellaver*, 200 F.3d at 495 ("The point of the mini-RIF, unlike a true RIF, is that the job really was not eliminated at all; because the fired employee's duties were absorbed by others, they were effectively 'replaced,' not

eliminated."). "[T]he determinative factor in deciding whether the mini-RIF variation applies is whether the discharged employee's duties were absorbed by an existing employee or eliminated, not the number of employees let go." *Petts*, 534 F.3d at 725; *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1012 n.5 (7th Cir. 2000) ("For purposes of deciding the proper prima facie case requirements to apply, our inquiry is dependent not on the number of employees terminated, but 'on whether [the employer] still needed [the plaintiff's] job responsibilities to be performed.'") (quoting *Michas*, 209 F.3d at 694). The Plaintiff in a mini-RIF case need not make a factual showing that similarly situated employees were treated better, but must instead show that his duties were absorbed by an employee outside the protected class. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007); *Michas*, 209 F.3d at 693.

Since the first three elements of the prima facie case are undisputed, all that is left for Plaintiff to show is that his duties were absorbed by an employee outside of the protected class. The Court concludes that Plaintiff has failed in this task. Plaintiff has failed to provide the court with admissible evidence identifying any individual who absorbed Plaintiff's job duties.

This is not to say that Plaintiff has not provided any evidence, because he has designated inadmissible hearsay. In support of his assertion that a younger worker replaced him, Plaintiff points to the following excerpt from his deposition:

Q.      Who was doing it [Plaintiff's job]?

A.      I can't remember his name. He's a younger guy. He was a new hire there. I don't know how long he's been there now. He's a younger fellow.

Q.      How do you know he was doing it if you weren't there anymore?

A.      One of the fellas I was talking to told me that that's who was doing it.

Q.      Who was talking to you at the plant? Who's giving you information?

A.      Don't remember. Just somebody I know.

(Plaintiff's Dep., p., l. 8–19). The source of the information would later be identified as either Terry Fugate ("Fugate") or Jack Kilpatrick ("Kilpatrick"). (*Id.*, p. 112, ll. 1–4). Fugate was terminated before Plaintiff, but was nonetheless able to provide this information because "[Fugate] said he stops down there [the South Milford facility] every now and again to talk to the guy." (*Id.*, p. 112, ll. 15–24). Plaintiff's only evidence that a younger employee absorbed his job duties, then, is Plaintiff's testimony regarding the statements of a third party as related by a different third party.

"Hearsay is a statement, other than one made by the declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted." *United States v. Linwood*, 142 F.3d 418, 424–25 (7th Cir. 1998) (citing Fed. R. Evid. 801(c)). "Whether a statement is hearsay and, in turn, inadmissible, will most often hinge on the purpose for which it is offered." *Id.* "'If . . . an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply.'" *Lee v. McCaughtry*, 892 F.2d 1318, 1324 (7th Cir. 1990) (emphasis omitted) (quoting 6 J.H. Wigmore, Evidence § 1766, at 250 (1976)). The statement of Fugate is textbook hearsay. It is plainly an out-of-court statement. In addition, it is offered by Plaintiff to provide the truth of the matter asserted; i.e., that Plaintiff was replaced by "a younger guy." Fugate's statement is, therefore, inadmissible.

Rule 56(e) requires that any evidence which is considered in deciding a summary judgment motion must be admissible evidence. The jurisprudence in this Circuit is clear that hearsay is prohibited in summary judgment filings and cannot be used to defeat summary judgment. *See Compania Administradora de Recuperacion de Activos Administradora de Fondos de Inversion Sociedad Anonima v. Titan Int'l, Inc.*, 533 F.3d 555, 562 (7th Cir. 2008) (disregarding affidavits opposing summary judgment that lacked personal knowledge and were based on speculation and hearsay); *Keri v. Bd. of Tr. of Purdue Univ.*, 458 F.3d 620, 631–32 (7th Cir. 2006) (striking hearsay

statements before ruling on motion for summary judgment); *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 735–36 (7th Cir. 2001) (affirming trial court's striking of inadmissible hearsay from summary judgment consideration); *Amer. Auto. Accessories, Inc. v. Fishman*, 175 F.3d 534, 539 (7th Cir. 1999) (discussing inadmissibility of hearsay statements in consideration of summary judgment and the burden of proving exceptions); *Bradley v. Work*, 154 F.3d 704, 707 (7th Cir. 1998) ("[T]o the extent that the proffered evidentiary materials contain inadmissible hearsay, lay opinions, speculations, or conclusions, they are stricken."); *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1150–52 (7th Cir. 1989) (discussing evidence offered and stricken in summary judgment consideration); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) ("In the form in which [plaintiff's evidence] was presented, it constituted inadmissible hearsay. The district court could not properly have relied upon the exhibits as submitted and neither may we."). As inadmissible hearsay, Fugate's statement is inappropriate for these summary judgment proceedings, and cannot be used to defeat Defendant's request for summary judgment. Since Plaintiff identifies no other younger employee who allegedly took over his job duties, Plaintiff has failed to establish a prima facie case of discrimination.

Even if Plaintiff were able to establish a prima facie case, his ADEA claim would still fail. Plaintiff does not dispute that Defendant has identified a legitimate, non-discriminatory reason for Plaintiff's termination – its business decision to move away from rack repair work. Instead, Plaintiff asserts that Defendant's proffered reason, the cessation of rack repair work, is pretextual. (ECF No. 25, pp. 22–23). To show pretext, "the plaintiff must present evidence suggesting that the employer is dissembling." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). "The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *Id*.; *see also*

*Coleman v. Donahoe*, 667 F.3d 835, 852 (7th Cir. 2012) ("[I]t is not the court's concern that an employer may be wrong about its employee's performance, or may be too hard on its employee.") (quoting *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 601 (7th Cir. 2010)). To demonstrate pretext, Plaintiff must point to evidence from which a reasonable jury could conclude that the Defendant's stated reasons for terminating him were "phony" or a "lie." *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995).

Plaintiff makes no specific argument of pretext in relation to his ADEA claim, instead relying on the pretext discussion from his *Frampton* argument. (ECF No. 25, p. 23). Plaintiff primarily focuses on Cheryl's misstatement in the EEOC position statement as evidence of pretext. However, a misstatement in an EEOC filing is not sufficient to prove discrimination, *See, e.g., Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 506 (7th Cir. 2017); *Lane v. Riverview Hosp.*, 835 F.3d 691, 697 (7th Cir. 2016), and Plaintiff has not demonstrated why it should be sufficient here. In addition to Cheryl's statement, the Plaintiff lists the following "bits and pieces" of evidence in support of his claim of pretext: Joe's phone call to Plaintiff urging him to use his personal and supplemental insurance; Defendant's creation of a job description for Plaintiff after it terminated him and received notice of an EEOC charge; Defendant's notice to Bosch that it intended to stop rack repair work after it terminated Plaintiff; and Defendant's ongoing rack repair work for Kautex. (ECF No. 25, p. 12). Plaintiff makes no argument or effort to explain how these "bits and pieces" of evidence tend to show pretext in relation to his ADEA claim, and the Court will not make that argument for him. *See Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel."). The Court concludes that Defendant's stated reason for termination was not pretext.

In sum, the Court concludes that Plaintiff has failed to establish a prima facie case of discrimination under the ADEA. Even if a prima facie case had been established, Plaintiff has submitted no evidence to show that Defendant's stated reason for Plaintiff's termination was pretextual. Accordingly, the Court concludes that Defendant is entitled to judgment on Plaintiff's ADEA claim.

## C.    PLAINTIFF'S ADA CLAIM

The ADA prohibits employers from discriminating against a "qualified individual" on the basis of his disability. 42 U.S.C. § 12112(a). To prove a claim of disability discrimination, the Plaintiff "must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (citing *Roberts v. City of Chi.*, 817 F.3d 561, 565 (7th Cir. 2016)). The language of the ADA requires proof of "but for" causation. *See A.H. by Holzmueller v. Ill. High Sch. Assoc.*, 881 F.3d 587, 593 (7th Cir. 2018). To defeat summary judgment, the plaintiff must adduce evidence that, when considered as a whole, would permit a reasonable jury to find that the defendant took adverse action against him because of his disability. *See Monroe*, 871 F.3d at 504. Plaintiff has not invoked *McDonnell Douglas* with respect to his ADA claim, and therefore the Court will review this claim under the default rule.

For the sake of efficiency, and because the Court's review of the record reveals triable issues of fact regarding whether the Plaintiff was disabled and was qualified to perform the essential functions of the job with or without reasonable accommodation during portions of the relevant periods, the Court will not include a discussion of the first two elements. The Plaintiff's claim would survive summary judgment if those were the only two elements of his disability

discrimination claim. However, the pivotal question in this case is whether the Defendant took adverse employment actions against the Plaintiff on the basis of his disability. *See, e.g., Guzman v. Brown Cty.*, 884 F.3d 633, 641 (7th Cir. 2018) (stating that it was not necessary to decide whether the plaintiff was a qualified individual with a disability because, even if she was, summary judgment was warranted because the evidence did not establish that an adverse employment action occurred as a result of that disability).

In order to state a claim for discrimination, Plaintiff must demonstrate that his disability was a "but for"[2] cause of his termination. *Monroe*, 871 F.3d at 504. It is on this ground that Plaintiff's ADA claim fails.

Plaintiff identifies four pieces of evidence that he asserts create a genuine issue of material fact as to causation. Plaintiff first asserts that the timing of his termination was suspicious, as it came less than three weeks after his injury. The timing of the injury is of little help to Plaintiff. Generally, suspicious timing alone "will rarely be sufficient . . . to create a triable issue." *Argyropoulos v. City of Alton*, 539 F.3d 724, 734 (7th Cir. 2008) (quoting *Culver v. Gorman*, 416 F.3d 540, 546 (7th Cir. 2005)); *see also Burks v. Wisc. Dep't. of Trans.*, 464 F.3d 744, 758–59 (7th Cir. 2006) (explaining that "suspicious timing alone . . . does not support a reasonable inference of retaliation" because the "mere fact that one event preceded another does nothing to prove that the first event caused the second" (internal citation omitted)). That is particularly true here, where the alleged disability had little, if any, affect on Plaintiff's ability to work during the intervening period. Plaintiff never told anyone that he could not do his job prior to his termination; it was a "matter of pride" to him. (Pl.'s Dep., p. 133, l. 14). Plaintiff never asked for any help in doing his

---

[2] As Defendant correctly points out in its reply, Plaintiff's reliance on *Widmar v. Sun Chem. Corp.*, 2013 WL 2112133, at *3 (N.D. Ill. May 15, 2013), *aff'd*, 772 F.3d 457 (7th Cir. 2014), an ADEA case, is misplaced. Plaintiff must show more than simply that his disability was a determining factor in his determination.

job tasks. (*Id.*, p. 139, ll. 14–20). Plaintiff submits no evidence to suggest that the injury had any impact on his job performance during this three-week period, or that Defendant believed that it had an impact. Moreover, describing the timing in this case as "suspicious" ignores the entirety of the other events transpiring at or around the same time, including the change of ownership and the change in Defendant's business model that resulted in the termination of seven employees. Therefore, the Court concludes that it would be unreasonable for a jury to draw the inference of discrimination from the timing alone.

Plaintiff next identifies the fact that Defendant continued to do some rack repair work after his termination.[3] It is undisputed that Defendant continued to do some rack repair work for a single customer, Kautex, through early 2018. However, the evidence is also undisputed that this constituted no more than two to three days of work each month. This was certainly not enough to require employment of an individual whose primary job responsibility was rack repair.

Plaintiff repeatedly turns, throughout his briefing, to the conversation between he and Joe in which Joe encouraged Plaintiff to submit his injury-related bills to his personal insurance rather than to Defendant's worker's compensation carrier. (ECF No. 25, pp. 2, 7, 9, 12, 17). Plaintiff does little more than repetitively recount the conversation; there is no argument or rationale presented as to how this conversation demonstrates, or even suggests, that his employment was terminated because of the condition of his hand. If Plaintiff fails to explain the relevance of the conversation to his ADA claim, the Court will not speculate for him. *Sanchez*, 792 F.2d at 703.

Finally, the Plaintiff points the Court to Cheryl's inaccurate statement in Defendant's EEOC position statement regarding Plaintiff's job duties. As noted above, a misstatement in an

---

[3] Plaintiff asserts that it is "suspicious" that Bosch was not informed of the decision to cease rack repair work until two days after Plaintiff's termination. Plaintiff does not explain why this is suspicious. If anything, this formal notice to a customer is evidence that Defendant really did intend to cease rack repair work, rendering this basis for termination non-pretextual.

EEOC position statement is not significant enough to demonstrate that Plaintiff was terminated due to his disability. *See, e.g., Monroe*, 871 F.3d at 506; *Lane v. Riverview Hosp.*, 835 F.3d 691, 697 (7th Cir. 2016). Plaintiff does not explain how failing to include all of Plaintiff's duties in Defendant's EEOC position statement demonstrates, or even suggests, that he was terminated because of his alleged disability.

In sum, the Court finds no evidence in the record to support the assertion that Plaintiff was terminated because of his alleged disability. For the purposes of his job duties, Plaintiff's hand injury appears to largely be a non-event; Plaintiff missed essentially no work time, submitted no injury report, and told Shipe that he would have "no problem" performing his job even after the injury. None of the arguments proffered by Plaintiff suggest anything different. Accordingly, based upon the designated facts, the Court concludes that judgment for Defendant on Plaintiff's ADA claim is appropriate.

## D.    PLAINTIFF'S *FRAMPTON* CLAIM

For the reasons stated above, the Court grants Defendant's summary judgment motion as to Counts I through IV. Because that disposition results in the dismissal of all claims over which the Court has original jurisdiction, see 28 U.S.C. § 1367(c)(3), the Court must address whether to retain jurisdiction over the state law claim in Count V and rule on Defendant's motion for summary judgment.

As the Seventh Circuit consistently has stated, "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see also Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007) ("As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish

jurisdiction over the remaining pendant state claims"); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits"). Yet the court of appeals has discussed "three well-recognized exceptions" to the general rule that "when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts." *Wright*, 29 F.3d at 1252. As the court has explained, occasionally there are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point to a federal decision of the state-law claims on the merits." *Id*.

The first example that the court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court." *Wright*, 29 F.3d at 1251. That concern is not present here, however, because Indiana law gives a plaintiff three years from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court. *See* Ind. Code § 34-11-8-1.

The second exception recognized in *Wright* applies when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." 29 F.3d at 1251 (quoting *Graf v. Elgin, Joliet & E. Ry. Co.*, 790 F.2d 1341, 1347–48 (7th Cir. 1986)). Here, although the Court has devoted significant resources to the disposition of the federal claim on summary judgment, it has not delved deeply into the state law claims. *See Davis*, 534 F.3d at 654 ("the district court disposed of the federal claims on summary judgment, and so 'substantial judicial resources' have not yet been committed to the case"). Thus, while there clearly are instances in which "a district court should exercise supplemental

jurisdiction over pendent state law claims for reason of judicial efficiency," *Miller Aviation v. Milwaukee Cty. Bd. of Supervisors*, 273 F.3d 722, 732 (7th Cir. 2001), this is not one of them.

The third circumstance to which the court of appeals has pointed in which disposition of pendent state law claims may be appropriate "occurs when it is absolutely clear how the pendent claims can be decided." *Wright*, 29 F.3d at 1251. For example, "[i]f the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter claim to the state court." *Id*. In addition, if the state-law claims are "patently frivolous," they should be resolved right away in the federal court. *Id*. However, "[i]f the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction." *Id*. The fact that the Court has determined that the Plaintiff was not discriminated against on the basis of his age or disability does not dispose of Plaintiff's claim that he was discriminated against on the basis of his potential worker's compensation claims. The Court also concludes that the state law *Frampton* claim is not patently frivolous, nor is it obvious to the Court that the claim lacks merit.

In sum, the Court concludes that none of the exceptions to the "usual practice" applies in this case. Accordingly, the Court denies Defendant's motion for summary judgment without prejudice and dismisses Count V with leave to refile in state court.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 22) is GRANTED in part and DENIED in part. Judgment is hereby entered in favor of Defendant on Counts I, II, III, and IV of Plaintiff's Complaint. Defendant's Motion is denied as to Plaintiff's state law claim in Count V; that claim is dismissed without prejudice to refiling in state court.

SO ORDERED on May 13, 2019.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT